# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

RICKYE D. ANDERSON,         )
                                     )

     Plaintiff/Appellant,    )  **Rutherford Chancery No. 91DR-506**
                                     )

VS.                         )  **Appeal No. 01A01-9704-CH-00186**
                                     )

L. LOIS ANDERSON,          )
                                     )

     Defendant/Appellee.   )

APPEAL FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE
THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

**FILED**

**February 6, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

**JAY B. JACKSON**
Murfreesboro, Tennessee
Attorney for Appellant

**THOMAS D. FROST**
Murfreesboro, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**TOMLIN, Sr. J.**

Rickye D. Anderson (the Father) appeals the trial court's order denying his petition to reduce his child support payments to his ex-wife, L. Lois Anderson (the Mother), and ordering him to pay a portion of the Mother's attorney's fees. We affirm.

The parties were divorced in 1993. The final divorce decree awarded the Mother primary physical custody of the parties' two minor children and ordered the Father to pay child support to the Mother in the amount of $938.47 per month. Pursuant to the Child Support Guidelines, this amount represented thirty-two percent (32%) of the Father's net monthly income. At the time of the divorce, the Father, who had a bachelor of science degree plus two years toward a masters degree, was earning a salary of approximately $48,000 from his employment with the Tennessee Valley Authority (TVA).

The final divorce decree also required the Father to pay to the Mother 32% of any income he received above this amount. Specifically, the decree provided that:

> At the end of each year, [the Father] shall determine whether he has earned taxable income above the regular pay in effect at the time of the hearing of this cause, including outside business income, and pay 32% of such additional income to [the Mother]. As to outside income it is understood that legitimate and lawful business expenses can be deducted. Any additional monies shall be due and payable within 30 days from receipt of W-2 forms or other I.R.S. forms showing other earnings of each and every year. Upon request, [the Father] shall provide copies of his yearly tax return or wage statements.

In 1994, TVA informed its employees that it planned to reduce its work force significantly. Specifically, TVA planned to reduce the Father's department, Information Systems, from about 1050 employees to 700 employees. In order to achieve this reduction in force without firing employees, TVA offered its employees three "early-out" options. The Father, concerned for his job security, chose an early-out option whereby, upon his termination from TVA, he received one-half of his final salary. When the Father left TVA in October 1994, he was earning in excess of $50,000. The Father's gross termination pay, therefore, was $25,307.50.

The month following his voluntary termination from TVA, the Father unilaterally reduced his monthly child support payments to the Mother. Rather than looking for a comparable position with another entity, the Father decided to start his own computer business. According to the Father, TVA paid its employees significantly more than private companies, and he did not want to take a pay cut. The Father admitted, however, that he previously earned more with a private company than he did at TVA and that, if he had found a comparable position, he could have expected to earn at least $40,000. In the two years prior to his termination, the Father earned in excess of $57,000 and $68,000, respectively.

Rather than immediately accepting his termination pay, the Father was able to defer payment until after January 1, 1995. Taking the position that he did not actually earn this money until 1995, the Father did not pay the Mother 32% of his termination pay. The Father received a net bonus of $16,285, 32% of which was $5,211. The Father used this money to support himself and his new wife and to finance their new computer business.

In January 1995, the Father also filed this petition to reduce his monthly child support obligation. As grounds therefor, the Father asserted that he was "involved in a new corporation and [was] currently earning $1,000 per month, substantially less than that earned at the time of the [final divorce decree]." The Mother filed a counter-petition seeking a judgment for child support arrearages and other relief.

The hearing did not take place until June 1996, eighteen months after the Father filed his petition. At the time of the hearing, the Father still was operating his computer business. The business, however, was not profitable, and the Father contended that he still was unable to pay child support at the amount previously established. The Father testified that he eventually would seek outside employment if the business was not profitable but that he was "not ready to give it up yet." The Father still believed that the business had the potential to make a lot of money, and he was "working very hard to turn the business around." The Father planned to make a decision on whether to continue

operating the business within the next year. The Father testified that, in any event, if the business did not become more profitable in the near future, he would not be able to operate the business any further because he would not be able to borrow any more money. The Father testified that a lending institution had denied his request for a business loan and that he almost had reached the credit limits on his various credit cards.

Although the Father reported only a small income from his computer business, the business also compensated the Father and his wife for certain expenses. The business, which rented office space in the wife's garage, paid at least $300 of the wife's $800 monthly house note, and the business paid over $500 in expenses every month for the Father's car. In addition, the Father's wife was paid a small salary by the business.

At the hearing's conclusion, the trial court entered an order denying the Father's petition for modification and awarding the Mother child support arrearages in the amount of $6,379.89; however, the trial court denied the Mother's request for an award of 32% of the Father's termination pay from TVA. The trial court also granted the Father temporary relief in that it allowed the Father to pay the Mother "the sum of $550.00 per month for a period of one year from the date of [the] hearing with the difference between $550.00 and the $938.47 previously ordered accruing as a permissible arrearage." The Mother was awarded a judgment of $2,000 for a portion of her attorney's fees. Finally, the trial court denied the Mother's request to modify the visitation schedule previously ordered.[1]

On appeal from the trial court's order, the Father has raised the following issues for this court's review:

1. Whether the trial court erred when it concluded that the [Father's] petition to reduce child support should be denied.

2. Even if [the Father] is considered willful[ly] and voluntarily underemployed, [whether] the trial court erred in failing to make an expressed factual determination as to [the Father's] earning potential.

_____

[1]Although not included in the Mother's counter-petition, this issue apparently was tried by consent of the parties.

4

3. Whether the trial court abused its discretion when it required [the Father] to pay $2,000 toward the attorney's fees of [the Mother].

4. Whether the trial court erred when it awarded [the Mother] a judgment for child support arrearage.

Trial courts are required to modify an obligor's child support obligation only when a "significant variance" exists between the amount of support required by the Child Support Guidelines and the amount of the current support obligation. State ex rel. McAllister v. Goode, No. 01A01-9510-CV-00452, 1997 WL 576329, at *5 (Tenn. App. Sept. 17, 1997) (citing T.C.A. § 36-5-101(a)(1)). In cases where the obligor seeks a downward modification, the obligor generally will be entitled to such modification by demonstrating the existence of a significant variance, usually defined as at least fifteen percent. See Tenn. Comp. R. & Regs. tit. X, ch. 1240-2-4-.02(3) (amended 1994).[2] Where the evidence shows that the obligor is "willfully and voluntarily unemployed or underemployed," however, the obligor is not entitled to a downward modification of his support obligation. Id.

The guidelines direct trial courts to determine the amount of support required by the guidelines "based on a flat percentage of the obligor's net income." Tenn. Comp. R. & Regs. tit. X, ch. 1240-2-4-.03(2) (amended 1994). Where an obligor is "willfully and voluntarily unemployed or underemployed," however, rather than awarding child support based on an obligor's actual income, trial courts are required to award child support "based on a determination of [the obligor's] potential income, as evidenced by [his or her] educational level and/or previous work experience." Tenn. Comp. R. & Regs. tit. X, ch. 1240-2-4-.03(3)(d) (amended 1994); see also Ford v. Ford, No. 02A01-9507-CH-00153, 1996 WL 560258, at *3 (Tenn. App. Oct. 3, 1996); Renick v. Renick, No. 01A01-9007-CV-00263, 1991 WL 99514, at *6 (Tenn. App. June 12, 1991), perm. app. denied (Tenn. Nov. 4, 1991).

___

[2] The guidelines provide that, for "purposes of defining a significant variance between the guideline amount and the current support order pursuant to T.C.A. § 36-5-101, a significant variance shall be at least [fifteen percent] 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. tit. X, ch. 1240-2-4-.02(3) (amended 1994).

In denying the Father's petition to reduce his child support obligation, the trial court specifically found that the Father had the capacity to earn a greater income than he was making at the time of the hearing. We believe that this finding is sufficient to support the imputation of income to the Father for purposes of determining his child support obligation. See Barnes v. Barnes, No. 02A01-9403-CH-00033, 1995 WL 114171, at **6-7 (Tenn. App. Mar. 17, 1995) (affirming child support award based on imputed income where trial court specifically found that father had ability to produce more income than he did at time of trial).

Moreover, we conclude that the evidence supports the trial court's decision to impute income to the Father. At the hearing below, the Father acknowledged that he was capable of earning more income than he currently was earning. The Father testified that he was earning about $48,000 from his employment with TVA at the time of the divorce in 1993. The Father's tax records for that year showed that he actually earned in excess of $57,000, which included income from another employer which paid him a higher salary than did TVA. The Father testified that, when he left TVA, he consciously chose not to seek a comparable position with another employer because he planned to start his own business. The Father also admitted that, had he found such a position, he probably would have earned at least $40,000 annually. The Father claimed that he could not have earned as much with another employer as he did at TVA; however, this testimony was contradicted by his own acknowledgement that in 1992, when he was working for a private contractor, he earned over $65,000 from this employer, more than he ever earned at TVA. Based on the foregoing evidence, we affirm the trial court's decision to deny the Father's request for a reduction in his child support obligation based on the court's finding that the Father's earning capacity was greater than his current income. See Riley v. Riley, 03A01-9480-CH-000268, 1995 WL 311331, at **1-2 (Tenn. App. May 22, 1995) (affirming trial court's award of child support based on potential income where father possessed bachelor of science degree from university, voluntarily left employment where he was earning $28,000 annually, and unsuccessfully attempted to earn living as farmer); Renick v. Renick, No. 01A01-9007-CV-00263, 1991 WL 99514, at *6 (Tenn. App. June 12,

6

1991) (remanding for determination of potential income where father claimed that his actual income was approximately $18,000 but he earned in excess of $35,000 in each of three years prior to divorce), perm. app. denied (Tenn. Nov. 4, 1991); Gutknecht v. Gutknecht, No. 01A01-9101-CH-00015, 1991 WL 79560, at *1 (Tenn. App. May 17, 1991) (affirming trial court's award of child support based on potential income where father conceded at trial that he was capable of earning $25,000 annually); cf. Beem v. Beem, No. 02A01-9511-CV-00252, 1996 WL 636491, at **3-4 (Tenn. App. Nov. 5, 1996) (holding that trial court erred in imputing income where father was forced to leave job earning $55,000 when his position was eliminated and he thereafter unsuccessfully sought comparable full-time position).

On appeal, the Father contends that the record does not support a finding of willful and voluntary underemployment because no evidence was presented that the Father's employment decision was made with the specific intent to escape his child support obligation. This court previously has rejected this interpretation of willful underemployment as used in the Child Support Guidelines. In Ford v. Ford, No. 02A01-9507-CH-00153, 1996 WL 560258 (Tenn. App. Oct. 3, 1996), we stated that:

> Examining the language of the subject provision in light of the policies underlying the guidelines and applicable case law, we hold that there is no requirement that there exist evidence of an obligor's intent to avoid support obligations in order to impute income to the obligor based upon his or her potential income.

Ford, 1996 WL 560258, at *3; accord Garfinkel v. Garfinkel, 945 S.W.2d 744, 748 (Tenn. App. 1996).

We also reject the Father's contention that our decision in Herrera v. Herrera, 944 S.W.2d 379, 387 (Tenn. App. 1996), requires us to remand this case for a specific determination of the Father's potential income. At the hearing, the Father testified that his salary was $48,000 at the time of the divorce when his initial support obligation was set at $938.47 pursuant to the Child Support Guidelines. Implicit in the trial court's decision to deny the Father's request for a reduction is the finding that the Father's potential income has not decreased from the amount he was earning at the time of the divorce, $48,000.

7

Inasmuch as the record contains evidence to support this figure, we decline to disturb the trial court's decision to deny the Father's petition.

In light of our affirmance of the trial court's decision, we likewise affirm the court's award of $6,379.89 in child support arrearages to the Mother. The Mother testified that this was the correct amount of arrearages at the hearing held in June 1996, and she introduced an exhibit showing all amounts paid since the divorce. Apparently, a subsequent hearing was held in July 1996 during which the Father introduced copies of checks which, he now contends, refuted this amount. We note, however, that no transcript of such a hearing appears in the record on appeal and, thus, we are unable to determine whether the Father properly raised this issue below. See State v. Boling, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992) (stating that, pursuant to T.R.A.P. 24(b), appellant has duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal"); Barnhill v. Barnhill, 826 S.W.2d 443, 458 (Tenn. App. 1991) (holding that, where appellant failed to make appropriate objection at trial court level, issue was waived on appeal).

We further note that the checks produced by the Father do not necessarily refute the amount testified to by the Mother. One check, dated July 1, 1996, and in the amount of $565.20, appears to cover the Father's child support obligation for the month of July 1996 and, thus, would not have reduced the arrearages amount which existed at the time of the June 1996 hearing. The other check, dated November 1, 1993, was for $445 and represented a portion of the Father's November 1993 child support obligation. The trial exhibit prepared by the Mother, however, indicates that she received a total of $866 in child support from the Father during that month, and the record contains no evidence that this total amount did not include the $445 check. Accordingly, we deny the Father's request that the arrearages amount be reduced by the amounts of these two checks.

Finally, we affirm the trial court's decision to require the Father to pay a portion of the Mother's attorney's fees, inasmuch as the Mother successfully pursued her counter-

petition for child support arrearages in the court below. Such an award is authorized by Tennessee Code Annotated section 36-5-103(c), which provides that:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, . . . both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

T.C.A. 36-5-103(c) (1996). As indicated by the statute, and as acknowledged by the Father on appeal, such an award lies within the discretion of the trial court. Moreover, we note that this court specifically has held this statute to be applicable to post-divorce proceedings to collect child support arrearages. See Sandusky v. Sandusky, No. 01A01-9605-CH-00209, 1996 WL 730288, at **1-2 (Tenn. App. Dec. 20, 1996); Boutin v. Boutin, No. 01A01-9601-CH-00014, 1996 WL 694122, at *4 (Tenn. App. Dec. 5, 1996); Hall v. Davis, No. 01A01-9404-CV-00146, 1994 WL 514139, at **2-3 (Tenn. App. Sept. 21, 1994).

The Mother also has raised an issue on appeal, contending that the trial court erred in failing to award her 32% of the $25,307.50 bonus received by the Father upon his voluntary termination from TVA. The Mother contends that such a distribution was mandated by the provision of the final divorce decree which required the Father, at the end of each year, to pay 32% of any additional income earned above his regular pay. The Mother correctly notes that the bonus received by the Father upon his termination constituted income as defined by the Child Support Guidelines. See Tenn. Comp. R. & Regs. tit. X, ch. 1240-2-4-.03(3)(a) (amended 1994) (defining gross income to include, inter alia, both earned and unearned wages, salaries, bonuses, severance pay, and pensions).

The trial court's order reveals that, rather than awarding the Mother a share of the bonus, the trial court considered the Father's receipt of the entire bonus as a factor in denying the Father's request for a reduction in his child support obligation. Specifically, the court recognized that, although the Father might have experienced a temporary reduction in earning ability upon his termination from TVA, such reduction was more than

compensated by the Father's receipt of the $25,307.50 bonus. Rather than grant the Father a temporary reduction in his child support obligation for the months following his termination from TVA, therefore, the trial court permitted the Father to retain the entire bonus.

We do not wish to reward the type of fiscal planning which, by deferring income, reduces an obligor's overall child support obligation. Under the unique facts of this case, however, we affirm the trial court's decision to deny the Mother's claim for 32% percent of the Father's bonus.[3] Certainly, the trial court would have acted within its discretion by granting the Father a temporary reduction in his child support obligation for the months following his termination from TVA while he was seeking reemployment. See, e.g., Brown v. Heggie, 876 S.W.2d 98, 99-100 (Tenn. App. 1993); see also Virostek v. Virostek, No. 02A01-9601-CH-00019, 1997 WL 224872, at **4-5 (Tenn. App. May 6, 1997). In effect, the trial court's decision forgives a portion of the arrearages which had accumulated at the time of the hearing.[4]

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to the Father, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

---

[3]Prior case law indicated that it was error for trial courts to award alimony or child support based upon a percentage of a commission, bonus, or other income that was uncertain and could vary from year to year. Franklin v. Franklin, 746 S.W.2d 715, 718 (Tenn. App. 1987); Paul v. Paul, 1988 WL 95272, at *2 (Tenn. App. Sept. 16, 1988). In the present case, however, the Father apparently did not appeal the final divorce decree containing this provision. We note that the Child Support Guidelines now provide that such variable income "should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs. tit. X, ch. 1240-2-4-.03(3)(b) (amended 1994).

[4]Even if the Father earned the bonus during 1994, as the Mother contends, the Mother's share was not due and payable until 1995, within thirty (30) days of the Father's receipt of a W-2 form or other I.R.S. form showing additional earnings in excess of $48,000. Accordingly, it appears that this portion of any arrearages did not accrue until after the Father filed his petition to reduce in January 1995. .

TOMLIN, Sr. J.